**Pages 1 - 16**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Sallie Kim, Magistrate Judge

```
UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
  VS.                          )      NO. CR 20-mj-70968 MAG-1
                               )
CHEN SONG,                     )
                               )
          Defendant.           )
_____)
```

San Francisco, California
Monday, July 20, 2020

**TRANSCRIPT OF PROCEEDINGS BY ZOOM WEBINAR**

**APPEARANCES BY ZOOM WEBINAR**:

For Plaintiff:
          DAVID L. ANDERSON
          United States Attorney
          450 Golden Gate Avenue
          San Francisco, California  94102
     **BY:  BENJAMIN KINGSLEY
          ASSISTANT UNITED STATES ATTORNEY**

For Defendant:
          STEVEN KALAR
          Federal Public Defender
          55 South Market Street - Suite 820
          San Jose, California  95113
     **BY:  TAMARA A. CREPET
          ASSISTANT FEDERAL PUBLIC DEFENDER**

Also Present:     **Richard Shek, Mandarin Interpreter
                  Carolyn Truong, Pretrial Services**

Reported By:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

| | |
|---|---|
| **Monday - July 20, 2020** | **10:46 a.m.** |

                    **P R O C E E D I N G S**

                         ---oOo---

    **THE CLERK:** Calling Criminal matter 20-mj-70968, United States vs. Chen Song.

  Counsel, please state your appearances for the record.

    **MR. KINGSLEY:** Good morning, Your Honor. Ben Kingsley for the United States.

    **THE COURT:** Good morning.

    **MS. CREPET:** Tamara Crepet on behalf of Chen Song, who is present on the Zoom. She waives her -- she waives her right to be in person this morning in light of the COVID pandemic.

    **THE COURT:** Thank you.

  And the defendant is being assisted by a Mandarin-speaking interpreter, who has been previously sworn in.

  Mr. Kingsley, this matter has been sealed. Are you moving to unseal the matter?

    **MR. KINGSLEY:** Yes, Your Honor. The Government moves to unseal the Complaint.

    **THE COURT:** Any objection, Ms. Crepet?

    **MS. CREPET:** No objection, Your Honor.

    **THE COURT:** The matter is unsealed.

  Ms. Song, you are here today because you've been charged with fraud and misuse of visas, permits, and other documents in a document called a Criminal Complaint. Today we'll talk about

1   the charge against you, the potential maximum penalties, your
2   constitutional rights, and we will also set some hearing dates
3   as well.
4       First of all, Ms. Song, you have the right to have a
5   lawyer present with you at all stages of the proceeding,
6   including if you're questioned by law enforcement.
7       You can choose your own lawyer, but if you can't afford
8   one, one will be appointed for you at no cost.
9       Ms. Crepet, are you asking for appointment of counsel?
10          **MS. CREPET:**  We are asking for provisional appointment
11  at this time, Your Honor.  I was able to speak with Ms. Song
12  yesterday at length in the jail; however, her understanding of
13  the English was not to the point where I felt comfortable
14  having her fill out a financial affidavit.
15          **THE COURT:**  Okay.
16          **MS. CREPET:**  So we will arrange to have her meet with
17  an interpreter with counsel, and at that time we will submit an
18  affidavit to the Court.
19          **THE COURT:**  Okay.  I'll provisionally appoint Tamara
20  Crepet of the Federal Public Defender's Office to represent
21  Ms. Song.
22       Ms. Song, you also have the right to remain silent.  You
23  don't have to make a statement at any time.  If you make a
24  statement, you can ask that your lawyer be present; and if you
25  start talking, you can stop; but if you make a statement, it

1  can be used against you.
2     In addition, Ms. Song, could you please state your full
3  name.
4         **THE DEFENDANT:**  (Through interpreter)  My full name is
5  Song Chen.
6         **THE COURT:**  Thank you, ma'am.
7     And how old are you?
8         **THE DEFENDANT:**  (Through interpreter)  I'm 38 this
9  year.
10        **THE COURT:**  Thank you.
11    Mr. Kingsley, could you summarize the charges in the
12 Complaint and the potential maximum penalties against Ms. Song?
13        **MR. KINGSLEY:**  Yes, Your Honor.
14    The defendant is charged in the Complaint with a violation
15 of Title 18, United States Code, Section 5046(a), fraud and
16 misuse of visas, permits, and other documents.  The maximum
17 penalties are 10 years of imprisonment, a $250,000 fine,
18 3 years of supervised release, and a $100 mandatory special
19 assessment.
20        **THE COURT:**  Ms. Song, do you understand the charges
21 and the potential maximum penalties against you?
22        **THE DEFENDANT:**  (Through interpreter)  I know -- I
23 know that now.
24        **THE COURT:**  Thank you.
25    And, Ms. Song, because you have been charged in a

1  Complaint, the case has two ways that it will go forward.  The
2  Grand Jury could meet and issue an Indictment against you; or
3  if the Grand Jury does not do that, you have a right to
4  something called a preliminary hearing.  At that hearing, you
5  could be present with your lawyer, present evidence, and
6  question witnesses.  The only issue at that preliminary hearing
7  is whether there's probable cause to hold you over for a trial.
8       The timing of that hearing depends on whether you're in
9  custody or out of custody.  If you're in custody, the
10 preliminary hearing has to take place within 14 days.  If
11 you're out of custody, it has to take place within 21 days.
12      Mr. Kingsley, what is the Government's position on
13 detention?
14      **MR. KINGSLEY:**  Your Honor, the Government is seeking
15 detention based on defendant's risk of flight.
16      **THE COURT:**  And, Ms. Crepet, what is your position on
17 detention?
18      **MS. CREPET:**  Your Honor, we'd like to move for release
19 today, and I am not sure whether the proposed surety had
20 difficulties with the Zoom, but Mr. -- I spoke with her last
21 night.  Mr. Shek and I spoke with her this morning.
22      Well, at the outset, this is not a presumption case.  As
23 currently charged, Ms. Song's exposure is very low.  It looks
24 like it could be no more than one year and a half, although
25 when the Government and I spoke on Saturday evening, he hinted

to me that it could potentially be more than that.

She has, to the best of my knowledge, no criminal history, the Government is not moving on grounds that she's dangerous, and there's an outbreak of COVID at the Santa Rita jail.

What the Defense would propose is that she be released with electronic monitoring, home confinement, and secured with an unsecured bond in the amount of $100,000, although her prospective surety, an aunt with whom she's lived for the past year and a half, does have $800,000 of equity in her home and is willing to secure a bond with her home.  The proposed surety is a U.S. citizen and has been a citizen for the past 10 years.

And so we think that that combination of conditions of 24 hours a day of home confinement with electronic monitoring secured by either -- a bond either secured by property or perhaps unsecured until the Defense has the opportunity to meet with Pretrial Services and discuss what other conditions might be reasonable to set would be appropriate for purposes of securing Ms. Song's release today as opposed to holding her in the jail for a longer period of time.

**THE COURT:**  Where is Ms. Song's passport right now?

**MS. CREPET:**  You know, that I do not know.  I think the Government might be in a better position to speak to that.

**MR. KINGSLEY:**  We seized it during our search.

**THE COURT:**  Okay.  I am willing to release Ms. Song today with a secured bond of $100,000.  Is the proposed surety

1  also willing to be a custodian?
2         **MS. CREPET:**  She is, Your Honor, and I actually spoke
3  with her about that specifically with Mr. Shek this morning.
4  She is willing to be a custodian.
5      I am a bit concerned that she's not on the Zoom.  I
6  e-mailed her the link, and I'm wondering if I might mute myself
7  to give her a ring and see if she's having technological
8  troubles or maybe Ms. Lock can --
9         **THE COURT:**  Why don't you do that; or if you tell me
10 her name, we can look and see if she's there.
11        **MS. CREPET:**  Oh, that would be great.  Her name is
12 Salun Wang.  W-A-N-G is her last name, and I think her first
13 name is spelled S-A-L-U-M [sic].
14        **THE COURT:**  Could she be under another person's name?
15        **MS. CREPET:**  You know, that's a possibility, but I
16 don't know what name that might be.
17        **THE COURT:**  Okay.  Why don't you go on mute and find
18 out?
19     And then, Melinda, why don't you start preparing the bond?
20        **MR. KINGSLEY:**  Your Honor?
21        **THE COURT:**  Yes.
22        **MR. KINGSLEY:**  The Government would like to make
23 argument on this and oppose her being released today, if that's
24 okay.
25        **THE COURT:**  Okay.  Why don't we wait until Ms. Crepet

1  is off the line.
2                    (Pause in proceedings.)
3       **MS. CREPET:**  Your Honor, apparently Ms. Wang is on the
4  Zoom.  Her name is spelled S-U-L-A-N, her first name, and I'm
5  not sure that that's the name reflected in the waiting room.
6       **THE COURT:**  There's no one with that name on there.
7  So let me tell you who I see in the waiting room.
8       Evelyn Ventura; Adam Gasner, who is a lawyer; Alex Gerstel
9  with the Probation Office; Angela Chuang, FPD; Angela Hansen,
10 FPD; Candis Mitchell, FPD; Conchita Lozano; Elbo Romero; Erik
11 Babcock, lawyer; Galaxy J7PERX.
12      **THE CLERK:**  Could that be her?
13      **THE COURT:**  Jeff, I don't know who that is; E&B; James
14 Shore; J. Christian; Jim Keith; J. Trott; Juan Ramirez; Long
15 Drake Xiao; Mario Overbeck, lawyer; OE3; SA Steve Coffin, FBI;
16 Scott Wilson; Sophia Whiting; Tisha Woo; Tom; Tom Henniker.
17      **MS. CREPET:**  All right.  I will -- I don't know if the
18 Government would prefer to make its argument, and then I can
19 respond and then call her; or I could try to --
20      **THE COURT:**  Melinda, do you have a way of -- do we
21 have a way of just talking to people who are in the waiting
22 room?
23      **THE CLERK:**  Yes.
24      **THE COURT:**  Do you know, Ms. Crepet, who it could
25 potentially be?  Is it a person with an Asian last name?

1   **MS. CREPET:**  I would assume so just based on the fact
2   that Ms. Wang's -- you know, Ms. Wang certainly is Asian and
3   the people in her home with her right now are family members.
4       You know, my colleague just pointed out that maybe she
5   could raise her hand, if they could ask in the waiting room for
6   a Sulan Wang to raise her hand.
7       **THE COURT:**  Sulan Wang, do you know how to raise your
8   hand?
9       Oh.  Evelyn Ventura and Long Drake Xiao raised their
10  hands.  So why don't you bring them in, Melinda.
11      And then, Mr. Kingsley, go ahead.
12      **MS. CREPET:**  I'll just text her to explain she has to
13  unmute herself.  I don't know what her level is --
14      **THE CLERK:**  She's unmuted.  Now she just needs to turn
15  on the video.
16      **MS. CREPET:**  Okay.
17      **THE COURT:**  Okay.  Hello, ma'am.  Do you need
18  translation also?
19      **MS. XIAO:**  (Nods head.)
20      **MS. CREPET:**  She does, Your Honor.
21      **THE COURT:**  Melinda, can we do that?
22      **THE CLERK:**  Yes, but she has to initiate the Chinese
23  channel herself --
24      **THE COURT:**  Okay.
25      **THE CLERK:**  -- on her end.

1          **THE COURT:**  Ms. Xiao, can you -- do you have a little
2   globe at the bottom of your screen?
3          **THE CLERK:**  Perhaps the interpreter could come on to
4   explain that to her.
5          **THE COURT:**  Right.
6      Mr. Shek, could you explain to Ms. Xiao how to get on the
7   interpretation mode?
8          **THE CLERK:**  He needs to switch to the English channel.
9          **THE COURT:**  Right.  Mr. Shek, you have to switch to
10  the English channel to speak to Ms. Xiao strangely enough.
11         **THE INTERPRETER:**  Oh, okay.  I was going to speak to
12  her in Chinese.
13         **THE COURT:**  Okay.  Now speak to her in Chinese.
14                 (Pause in proceedings.)
15         **THE INTERPRETER:**  Should I change to Chinese?
16         **THE COURT:**  Yes.  Change to Chinese and see if that's
17  working.
18      Okay.  Now try.
19                 (Pause in proceedings.)
20         **THE INTERPRETER:**  Apparently not.
21         **THE COURT:**  Okay.
22         **MS. CREPET:**  I can also try texting.
23         **THE COURT:**  Okay.  Whoever is with Ms. Xiao, you
24  either will have a little globe, a round icon, at the bottom of
25  the screen if you're on a -- or go to the three dots at the top

where it says "More."

(Pause in proceedings.)

**THE COURT:** Do you see that? Hello? Do you see that?

(No response.)

**THE COURT:** Okay. Are you on a laptop or an iPad? What kind of computer are you on?

**MS. XIAO:** (No audible response.)

**THE COURT:** Okay. That will not work. We're going to have to come back tomorrow. I'm sorry. You're going to have to work out these technical issues.

So let's go ahead and make the argument, but then come back tomorrow because until I can actually communicate with the surety and custodian, I cannot figure out how to proceed.

Mr. Kingsley, go ahead with your argument.

**MR. KINGSLEY:** Thank you, Your Honor.

This isn't a normal visa fraud case, as I think the Court knows. The defendant is an active member of the military of the People's Republic of China. There were facts established in the affidavit supporting that and then further evidence that has been uncovered since then, including a couple of documents recovered from her hard drive that we didn't include in the Complaint because we didn't have them at that point.

This isn't an isolated case. This is part of a broader program of the PLA illegally sending military scientists to the United States under various forms of covers. In this case

1  Ms. Song's cover related to the fact that she wasn't in the
2  military and the name of the hospital that she worked at.
3      She has every reason to leave and her country has every
4  reason and ability to get her out.  There's nothing we can do.
5  Electronic monitoring won't prevent the Chinese government from
6  getting her out if they're motivated.
7      The fact that we don't -- have her passport is basically
8  irrelevant because she works for the Chinese military.  Either
9  they can issue her another passport or another fake document or
10 she can get on a flight.  And it's my understanding from CBP
11 that it's up to the airlines, which in this case would probably
12 mostly be airlines that are Chinese-based airlines that have
13 shown a willingness to help Chinese officials get out of the
14 United States before -- and I can get into that in more detail
15 if we need to -- but the airlines, it's up to them as to
16 whether they want to let somebody on with a passport or not.
17     She could get to the consulate in almost no time.  I just
18 don't think it's a realistic way of keeping her in confinement.
19     I'm prepared to make a much more detailed proffer on why
20 her specific facts I think make her a flight risk; and then in
21 addition I can proffer on at least one and possibly two other
22 cases that are quite similar that indicate sort of aspects of
23 this that show that coordination by the Chinese government,
24 contact potentially with the Chinese government, and the
25 motivation and ability of the Chinese government to get her out

of the country.

**THE COURT:** Doesn't Ms. Song have a child here in the United States as well?

**MR. KINGSLEY:** She does, but the child is not a U.S. citizen; and other than -- I mean, she may have other family here. Other than her aunt, I don't think -- the child could leave at any time, and we saw that with Jin Wang (phonetic), who was the other case that I charged here for the person arrested at LAX. His family went back to China after he was arrested and detained.

As to whether they would have stayed here if he had been released, I don't know; but the child isn't a U.S. citizen as far as I'm aware and has no reason to be here.

**THE COURT:** Okay. Ms. Crepet.

I'll hear from Ms. Crepet. Thank you.

**MS. CREPET:** Yes, Your Honor. I think notwithstanding the Government's representations, we do have a difference in this case, and that is Ms. Song has an aunt with whom she has lived for the past year and a half who's willing to secure the bond and she's willing to secure the bond with her property. That makes an appreciable difference because Ms. Wang is not a person of great resources. She's semi-retired. She now makes about $50,000 a year; and if she is willing to secure a bond with her home, that is a significant deterrent to Ms. Song in escaping her obligation and her court obligations.

         In addition, in regard to concerns about Ms. Song fleeing, I'm sure the Government can give the airport a photo and take other measures to try to prevent her from fleeing; and if Ms. Wang is a custodian, she can immediately notify Pretrial Services if Ms. Song is to leave her home.

         And I think if there is electronic monitoring in the home and she leaves the home, notification regarding that will be instantaneous and precautions can be taken at the airport to make sure that she doesn't leave the country.

         **THE COURT:** Okay. I am willing to release Ms. Song, but the problem is that until I'm comfortable that the custodian and surety understands the risks with translation, I cannot go forward. So what I'm willing to do is put this on tomorrow's calendar.

         Ms. Crepet, I'm going to ask you to work with the proposed surety and custodian to make sure she can get access so that she can hear the translation tomorrow.

         **MS. CREPET:** Yes. We will work with the interpreter to make sure that there are no more technological difficulties.

         And just so I know, the issue today is that the globe is not showing on her screen because she's calling in with the phone instead of the computer? Is that the technological problem?

         **THE COURT:** That's what I heard, was that the computer gives video but not audio. I think there is a way to get the

1  translation on the phone, but I don't -- I mean, I have
2  instructions.  That's all I can tell you.
3          **MS. CREPET:**  We will do some experimenting today,
4  Your Honor, and we will make sure it's working tomorrow.
5          **THE COURT:**  Okay.  So let's come back tomorrow at
6  10:30 a.m.
7      Is there anything else to talk about today?
8          **MS. CREPET:**  Nothing from the Defense, Your Honor.
9          **THE COURT:**  Okay.  Ms. Crepet, could you also make
10 sure that Pretrial Services and Melinda have the address and
11 the name of the proposed surety and custodian and the address
12 of the property that will be secured?
13         **MS. CREPET:**  Yes, Your Honor.  I will e-mail that to
14 Ms. Lock.
15         **THE COURT:**  Okay.  And to Ms. Truong in Pretrial
16 Services.
17         **MS. CREPET:**  Yes.
18     Thank you very much, Your Honor.
19         **THE COURT:**  Is there anything else we can talk about
20 today?
21         **MS. CREPET:**  Nothing from the Defense unless the
22 Government has additional points it would like to address.
23         **MR. KINGSLEY:**  No, Your Honor.
24     Just to clarify, the proposal, which I understand the
25 Court is not ordering yet because you want to talk to the

1   surety, is 100,000 secured out of the 800,000 of equity in the
2   house?
3           **THE COURT:**  (Nods head.)
4           **MR. KINGSLEY:**  Okay.  I mean, I have further concerns
5   about that given the volume of the equity in the house and the
6   fact that my understanding is that it was just purchased in
7   May.  So I don't think we know where that money came from.  We
8   don't know whose money it is.  I think there's a lot of other
9   questions I would have, but we can discuss that tomorrow when
10  the surety is present.
11          **THE COURT:**  Okay.  Melinda, did you have a point you
12  wanted to make?
13          **THE CLERK:**  (Shakes head.)
14          **THE COURT:**  Okay.
15      All right.  So at this time the defendant will be remanded
16  to the custody of the U.S. Marshal to return tomorrow at
17  10:30 a.m. with the proposed surety and custodian present as
18  well.
19          Thank you.
20                (Proceedings adjourned at 11:08 a.m.)
21                          ---oOo---
22
23
24
25

1
2
3                    **CERTIFICATE OF REPORTER**
4          I certify that the foregoing is a correct transcript
5   from the record of proceedings in the above-entitled matter.
6
7   DATE:   Wednesday, July 22, 2020
8
9
10
11   _____
12          Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                     U.S. Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25