1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

            Plaintiff,

    v.

CHEN SONG,

            Defendant.

No.  CR 21-00011 WHA

**MEMORANDUM OPINION SUPPLEMENTING VERBAL ORDER MADE IN S.C.I.F. RE DISCOVERY OF MATERIAL PURSUANT TO CIPA**

## INTRODUCTION

In this criminal prosecution of visa fraud, the government moves to protect purported classified information from discovery by defendant under Section 4 of the Classified Information Procedures Act, 18 U.S.C. App. III.  This memorandum explains why the government has not adequately invoked its privilege.  The rest of the analysis is on the sealed oral ruling transcribed by the court reporter.

## STATEMENT

A criminal complaint charged neurologist and Chinese-national Dr. Chen Song with visa fraud.  Until her arrest on July 18, Dr. Song studied brain diseases as a visiting scholar at Stanford University on a J-1 visa while living in Newark, California with her then six-year old daughter.  The government alleges that Dr. Song is, in fact, an "active member[]" of the Chinese military and concealed that fact to obtain her work and study-based visitor program visa.  Grand juries returned a first indictment against Dr. Song on January 7, 2021, and a

superseding indictment (adding several related charges) on February 18.  Dr. Song is presently out of custody on a $250,000 bond and awaiting a bench trial scheduled for April 9.

The government notified the Court on February 19 that these proceedings would touch on classified information.  Following appointment of a classified information security officer, the government filed *ex parte* and *in camera* motions under Section 4 of the Classified Information Procedures Act on March 15 and March 19.  To aid review, the undersigned invited counsel for Dr. Song to file a public memorandum of points and authorities on the relevant law and an *ex parte* and *in camera* delineation of her planned defenses.  The parties also provided supplemental briefing regarding the form by which the government may invoke the privilege at issue here.  This memorandum follows an *in camera* and *ex parte* hearing with the government.

## ANALYSIS

The government's privilege to withhold so-called "state secrets" "is not to be lightly invoked."  Rather, "[t]here must be [a] formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer."  Invocation of the privilege demands a searching review by a court, though with due deference to the executive's prerogative and expertise in these realms and care to avoid disclosure of such secrets.  *United States v. Reynolds*, 345 U.S. 1, 7–11 (1953).

The state-secrets privilege is uniquely powerful.  In civil actions against the government, "even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that [state] secrets are at stake."  Thus, the privilege bars liability where a plaintiff's claim for relief necessarily relies on the privileged information, or where litigation of such claim will surely stray too close for comfort to the information's disclosure.  But the bar works both ways.  And, historically, where the government sought to invoke the state-secrets privilege in criminal prosecution, it has been permitted to do so "only at the price of letting the defendant go free."  *Reynolds*, 345 U.S. at 11; *Fazaga v. F.B.I.*, 965 F.3d 1015, 1041 (9th Cir. 2020).

United States District Court
Northern District of California

United States District Court
Northern District of California

Through the Classified Information Procedures Act, or CIPA as it is commonly known, Congress sought to remedy this quandary recognizing that through the use of *ex parte* and *in camera* proceedings, criminal matters touching upon state secrets could both proceed *and* preserve a defendant's due process right to mount an able defense. *See United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1989). Section 4 of CIPA thus clarifies a district court's power to restrict discovery under Federal Rule of Criminal Procedure 16(d)(1):

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.

The government's motion for such relief may be made *ex parte* and *in camera*. 18 U.S.C. App. III, § 4.

A district court presented with a motion under Section 4 must determine whether the information, under the rules of criminal procedure, statute, and common law, is discoverable in the first place. If it is, then we must next determine if the government has made a formal claim of privilege. If it has, then we determine whether the evidence is relevant and helpful to the defense. And, if so, last, we craft the appropriate scope of discovery of that information, such as a substituted statement of the relevant material or stipulation of relevant fact. We must ensure that the accused will proceed to trial in substantially the same position as had the government actually disclosed the classified information. *United States v. Sedaghaty*, 728 F.3d 885, 903–05 (9th Cir. 2013).

A defendant has, among others, "a right to discovery of documents that are material to preparing the defense." The bar is low. Information need only help prepare a defense or induce a defendant to abandon one particular defense and pursue another. It need not be admissible at trial; information is material simply by leading to admissible evidence. *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) (quotations omitted).

The Court has articulated specific findings in a sealed, *ex parte* hearing yesterday with the government, the transcript of which will be provided to our court of appeals along with the

government's motions and the classified submissions in the event of an appeal by either side. The Court concluded that most of the material subject to the government's CIPA § 4 motions was not discoverable either under Rule 16 or *Brady v. Maryland*, 373 U.S. 83 (1963), or its progeny.  The remainder, however, the Court concluded to be discoverable, relevant, and helpful to the defense.  *Roviaro v. United States*, 353 U.S. 53, 60–62 (1957).

The purpose of this memorandum though is to explain why the government has not properly invoked its privilege here.  Our court of appeals has directed:

> CIPA § 4 was intended "to clarify the court's powers under Fed.R.Crim.P. 16(d)(1) to deny or restrict discovery in order to protect national security." *Sarkissian,* 841 F.2d at 965.
>
> *            *            *
>
> When considering a motion to withhold classified information from discovery, a district court must . . . determine whether the government has made a formal claim of the state secrets privilege, "'*lodged by the head of the department which has actual control over the matter, after actual personal consideration by that officer*.'"  *United States v. Klimavicius–Viloria,* 144 F.3d 1249, 1261 (9th Cir.1998) (quoting *United States v. Reynolds,* 345 U.S. 1, 7–8 (1953)).

*Sedaghaty*, 728 F.3d at 904 (cleaned up) (emphasis added).

Here, the government's affidavits purporting to invoke the privilege are signed neither by the Secretary of State nor the Attorney General.  Nor are they signed by any of their deputies or direct subordinates.  Rather, they come from lower level officers.  The Court finds that the government has not made a "sufficient showing," as required by Section 4.

The government characterizes its privilege to withhold classified information under CIPA as distinct from the state-secrets privilege and, thus, not requiring the involvement of a department head.  But our court of appeals told us exactly how to evaluate a CIPA Section 4 motion in *Sedaghaty*.  And, both the terminology it used, "state secrets privilege," and its direct quote from *Reynolds* leave us no room but to conclude that our court of appeals considers the privilege invoked under CIPA to be the state-secrets privilege as recognized in *Reynolds*, which requires a "formal claim of the state secrets privilege, lodged by the head of the department which has actual control over the matter."  *Ibid*. (quotes omitted).

The government correctly notes that our court of appeals began this line of decision in *Sarkissian* by merely assuming that CIPA rests new procedure upon the state-secrets privilege articulated in *Reynolds*. Yet this ignores a crucial fact. CIPA "does not expand or restrict established principles of discovery and does not have a substantive impact on the admissibility of probative evidence." So, by its own terms, CIPA *creates no privilege*. *Id.* at 903. Our court of appeals has proceeded on that understanding of the privilege thereafter in *Klimavicius-Viloria* and *Sadaghaty*. Or, put simply, what began as an assumption has become the law of this circuit by both reason and custom. Our court of appeals may perhaps steer a different course; but this district judge is not at liberty to deviate from the law as currently dictated. *See id.* at 903–04; *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1260–61 (9th Cir. 1998); *Sarkissian*, 841 F.2d at 965.

Our court of appeals is not alone. Both Courts of Appeals for the Fourth and Fifth Circuits agree that CIPA expounds only procedure. The Court of Appeals for the District of Columbia Circuit agrees also that CIPA creates no new privilege. Indeed, noting that "CIPA [S]ection 4 *presupposes* a governmental privilege against disclosing classified information," the Court of Appeals for the Second Circuit agrees that "[t]he most likely source for the protection of classified information lies in the common-law privilege against disclosure of state secrets." *United States v. El-Mezain*, 664 F.3d 467, 519–20 (5th Cir. 2011); *United States v. Rosen*, 557 F.3d 192, 194–95 (4th Cir. 2009); *United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008); *United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006).

The government next notes that Section 4 requires no more than a "sufficient showing." But the deliberate paucity of this requirement supports all the more the conclusion that Congress *did not intend* to revise the rules for judicial scrutiny of invocations of the state-secrets privilege. The government presses onward, however, arguing that Section 4's failure to mention the Attorney General implies no such head of department requirement, given several other sections of CIPA do expressly mention the Attorney General. But more departments than Justice might invoke the state-secrets privilege, and the list of executive department heads

United States District Court
Northern District of California

1   includes many more than just the Attorney General, so Section 4's silence on this point tells us

2   little.  *See, e.g. Mohamed v. Jeppesen Dataplan*, 614 F.3d 1070, 1080 (9th Cir. 2010).

3    The undersigned acknowledges that both the Courts of Appeals for the Fourth and Fifth

4   Circuits have gone the other way on the ultimate point, holding that the government may

5   invoke privilege under Section 4 without involving a department head.  *El-Mezain*, 664 F.3d at

6   521–22; *Rosen*, 557 F.3d at 198.  Those decisions, however, largely rest on the distinction

7   between the criminal context (as here) and the civil context (as in *Reynolds*).  The undersigned

8   finds that reasoning unpersuasive.  Though differences arise in specific applications, on the

9   whole we apply the same underlying rules of evidence and privilege to both criminal and civil

10   proceedings.

11    In its last point, the government contends that whatever the language our court of appeals

12   has used, it has not actually required in practice for a department head to invoke the state-

13   secrets privilege under CIPA.  But there is no way for a district judge to verify this behind-the-

14   scenes suggestion or to determine the extent to which the issue was even raised in cases where

15   the problem went unnoted.  District judges ought to hew to the actual words given to us on the

16   subject by our courts of appeals.

17    Moreover, though *Reynolds* specified that "the head of the department" must invoke the

18   privilege, it offered the alternate characterization of "the minister who is the political head of

19   the department," in an accompanying footnote.  The signatory in fact offered in support of

20   military secrets was not the Secretary of Defense but the subordinate Secretary of the Air

21   Force.  So *Reynolds* itself permits a measure of flexibility beyond just the highest department

22   heads.  But there is a limit.  The secretaries of the military branches, of course, are political

23   appointees of the President, confirmed by the Senate.  Here, in contrast, the signatories do not

24   come close to even this relaxed standard.  Given the great deference we afford to the

25   executive's designation of material as a state secret, the formal requirements of *Reynolds* guard

26   against executive caprice.  Decisions of national importance come from similarly important

27   officials.  345 U.S. at 7–10, fn. 20

28

1

**CONCLUSION**

As the Court stated on the record, the government's shortfall may not matter in this case because all or substantially all of the material ordered to be produced was discoverable, relevant, and helpful to the defense, so it would've been required to be produced anyway. What was protected from disclosure was all determined to be non-discoverable anyway. Nevertheless, this memorandum explains the law of our circuit as to who must sign the declaration.

Dated:  March 26, 2021.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE