STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    eric.cheng@usdoj.gov
    kyle.waldinger@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 21-0011 WHA |
| Plaintiff, | UNITED STATES' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE JULY 13, 2020 INTERVIEW |
| v. | |
| CHEN SONG, <br>     a/k/a SONG Chen, | |
| Defendant. | |

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................................1

II. PROCEDURAL BACKGROUND.......................................................................................1

III. ARGUMENT .........................................................................................................................3

    A.  Legal Standard ..........................................................................................................3

    B.  Defendant's July 13, 2020 Statements to the FBI Were Made In Noncustodial Interview Sessions ....................................................................................................4

    C.  Regardless of Whether Defendant's Statements Were Made While She Was "In Custody," Defendant's False Statements Constitute Crimes and Are Admissible ..................................................................................................................5

IV. CONCLUSION......................................................................................................................7

# I. INTRODUCTION

Defendant's two voluntary interview sessions with the FBI on the morning of July 13, 2020, in an unlocked bedroom at her own residence by two FBI agents in business attire without any visible firearms, before and during which she was repeatedly informed she was not in custody and that her participation in the interviews was voluntary, and amidst her freely checking on her sleeping daughter or going about her day in various places elsewhere in the residence, were demonstrably non-custodial and no *Miranda* warnings were required. *See* Dkt. 113 ("Opposition").

Importantly, as explained in the government's Opposition analyzing the factors set out by the Ninth Circuit under the totality of the circumstances, *Miranda* was not meant to guard against a situation in which the defendant never actually confesses to anything and instead repeatedly lies to agents, as was the case here. Rather, even if the Court were inclined to find that defendant was in custody at the time of her discussions with the FBI—which it should not, for the reasons set forth in the government's Opposition—the statements should still not be suppressed under the Ninth Circuit precedent set out below because the statements were themselves a criminal act and therefore admissible in the government's case-in-chief at trial, as has been charged in this case (in Count Five, and Count Two in part, of the superseding indictment). (Dkt. 55.)

The government submits this supplemental brief opposing the defense's motion to exclude the July 13, 2020 interview (Dkt. 87), pursuant to the Court's request (Dkt. 124). For all of the reasons set forth in the government's Opposition (Dkt. 113), at the motion hearing (Dkt. 119), and in this supplemental brief, defendant's motion should be denied because her July 13, 2020 statements were made to the FBI while defendant was not "in custody," and further because her false statements are admissible regardless of whether they were made in custody given that they constitute a criminal act.

# II. PROCEDURAL BACKGROUND

On January 7, the grand jury charged defendant with one count of visa fraud. (Dkt. 46.) On February 9, the parties jointly requested a trial date in late April, notifying the Court that the government was considering additional obstruction of justice and false statements charges that were already described to the defense. (Dkt. 52.) Defendant also "agree[d] not to file any pretrial motions, including discovery motions or motions challenging the pleadings" if the government consented to a bench trial,

and the government did so consent after the Court indicated it would set trial for April 9 or 12.  (Dkts. 52, 65, 67.)

On February 18, the grand jury returned a superseding indictment with four additional charges against the defendant: obstructing official proceedings, in violation of 18 U.S.C. § 1512(c)(2) (Count Two); two counts of destruction of records for use in official proceedings, in violation of 18 U.S.C. § 1512(c)(1) (Counts Three and Four); and making false statements to a government agency, in violation of 18 U.S.C. § 1001(a)(2) (Count Five).  (Dkt. 55.)  In particular, Count Five charged defendant with willfully and knowingly making false statements to the FBI based on her July 13, 2020 statements and representations that (a) she had left the Chinese military in 2011; (b) she had no affiliation with the Chinese military after 2011; (c) she had no affiliation with the military as of July 13, 2020; (d) the hospital at which she worked in China was not affiliated with the PLA Air Force; and (e) the hospital at which she worked in China was not affiliated with FMMU (Fourth Military Medical University)/AFMMU (Air Force Military Medical University).  Count Two charged defendant with executing a scheme to obstruct justice, which included, among other things, the July 13, 2020 false statements she made to the FBI.  (*See* Dkt. 55 at ¶ 16.)

On March 24, the defense submitted a motion seeking suppression of defendant's July 13, 2020 statements styled as a "motion in limine to exclude" and requesting an evidentiary hearing on the eve of the previously-scheduled trial date.[1]  (Dkt. 87.)  The government opposed the motion (Dkt. 113), and the defense submitted a reply (Dkt. 117).  Following the motion hearing before the Court on May 25, 2021, the defense submitted a request to file supplemental authority on June 2 in reference to an order issued in *United States v. Juan Tang*, Case No. 20-cr-134 (E.D. Cal.).  *See* Dkt. 120 ("Request").  The Request observed that the *Tang* court granted a motion to suppress the statements of that defendant, remarking that the court dismissed a false statements count under 18 U.S.C. § 1001(a)(2) because the excluded statements were the basis for the count.  After the government filed a response and the defense made an additional filing on June 3 (Dkts. 121 & 123), the Court issued an order on June 4 for the parties to submit supplemental briefing by June 8.  (Dkt. 124.)

---

[1] A motion for suppression of evidence is a "pretrial motion" under the Federal Rules.  *See* Fed. R. Crim. P. 12(b)(3)(C).

## III. ARGUMENT

### A. Legal Standard[2]

The Ninth Circuit has held that the exclusionary rule does not apply to statements that themselves constitute a crime, given that "[c]ommitting a crime is far different from making an inculpatory statement." *See United States v. Mitchell*, 812 F.2d 1250, 1253 (9th Cir. 1987) (overruled on other grounds) ("We exclude inculpatory evidence when it is obtained as a result of an unlawful search or seizure. We have never, however, applied the exclusionary rule as a bar to the prosecution of a crime.").

In particular, a "failure to give a *Miranda* warning does not bar prosecution of an offense committed while in custody." *See United States v. Gordon*, 974 F.2d 1110, 1116 (9th Cir. 1992) (overruled on other grounds) ("The statements [defendant] seeks to suppress were not merely evidence of a crime, but also the crime itself. In this situation, whether [defendant] received a *Miranda* warning is irrelevant. The purpose of the *Miranda* warning is to protect defendants by safeguarding their privilege against self-incrimination." (citations omitted)).

Courts have applied this specific principle—that statements constituting a crime are not subject to the exclusionary rule and the *Miranda* "in custody" analysis—to reject the suppression of statements that form the basis of false statements and obstruction charges. *See, e.g.*, *United States v. Copeland*, 291 F. App'x 94, 96 (9th Cir. 2008) (unpublished disposition) (citing *Mitchell*, 812 F.2d at 1253–55) (despite concluding that an interrogation was custodial, finding "[w]ith respect to the three false statement counts, the false statements [defendant] made during the September interview were themselves criminal and admissible at trial"); *United States v. Gardner*, 993 F. Supp. 2d 1294, 1306–07 (D. Or. 2014) (declining to suppress "those statements that are themselves the operative basis of the crime charged" with respect to a violation under 18 U.S.C. § 1512); *see also, e.g.*, *United States v. Melancon*, 662 F.3d 708, 712 (5th Cir. 2011) ("[b]ecause the statements [defendant] made were themselves charged as criminal conduct, they were properly admitted as the key evidence on the counts of making false statements," even if obtained in violation of defendant's *Miranda* rights).

---

[2] The government also incorporates by reference the legal background provided in its opposition to defendant's motion. *See generally* Dkt. 113.

**B. Defendant's July 13, 2020 Statements to the FBI Were Made In Noncustodial Interview Sessions**

As an initial matter, defendant's interview sessions with the FBI on July 13, 2020 were noncustodial and did not require *Miranda* warnings, as set forth in the government's Opposition. (Dkt. 113.) The nonprecedential *Tang* order cited in defendant's recent Request does not change the conclusion of a proper analysis of the undisputed facts of this case with respect to the factors set out by the Ninth Circuit in *Craighead* and *Hayden*. *See United States v. Craighead*, 539 F.3d 1073, 1084 (9th Cir. 2008); *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001).

In particular, the defense's Request omits that the *Tang* court found that the agents did not advise that "'[defendant] was not under arrest and that [s]he would not be arrested that day …,' '[her] statements were voluntary,' … and that '[s]he was free to leave.'" (Dkt. 120-1 at 14). By contrast, it is undisputed in this case that such advisements were provided in substance by the agents to the defendant, as she was repeatedly informed before her first interview began and during her interview that she was not in custody and that her participation in the interviews was voluntary, and she was told that she could leave during the interview as well. (Dkt. 113 at 11–14; 28–29.) In fact, defendant herself acknowledged during the interview sessions that she was not under arrest and that she need not answer questions, as reflected in the audio recordings. *Id.* These undisputed facts weigh heavily against a finding that defendant was in custody at the time of her statements to the FBI. *See Craighead*, 539 F.3d at 1084 (factor four); *Hayden*, 260 F.3d 1062, 1066 (factor one); *see also United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004) (en banc) ("Perhaps most significant for resolving the question of custody, Defendant was expressly told that he was not under arrest …").

In addition, the defense's Request omits that the *Tang* court found that the "there were no places for Defendant to retreat had she wanted to terminate the interrogation," citing "the small size of the apartment and the impending arrival of the new tenant that day." (Dkt. 120-1 at 9–10). Here, it is undisputed that defendant moved about her residence to various other rooms beyond the unlocked first-floor bedroom where the interviews took place on the morning of July 13, 2020, including by going upstairs before the first voluntary interview session to spend time in two other rooms without any agents inside (her daughter's and her own bedroom), by returning upstairs again right after concluding the first

1  interview to get her daughter ready, and by proceeding back downstairs to the kitchen to go on with her
2  day with her daughter in preparing breakfast, observing her daughter doing distance learning, and
3  playing with her daughter—all for more than an hour before defendant agreed to a second voluntary
4  interview session.  (Dkt. 113 at 23–24.)  Accordingly, there were numerous places in the home to which
5  defendant could have easily "retreated" if she wished to conclude either interview session at any point
6  (places where she in fact did come from and return).  *See Craighead*, 539 F.3d at 1084 (factor one);
7  *Hayden*, 260 F.3d 1062, 1066 (factor three).

8        The other undisputed facts in this case confirm that defendant was not in custody when she was
9  interviewed by the FBI on July 13, 2020.  For instance, it is undisputed that the interview sessions took
10 place in an unlocked bedroom at her residence with two FBI agents in business attire without any visible
11 firearms.  (Dkt. 113 at 21–22.)  It is also undisputed that defendant was never restrained or handcuffed,
12 and the only time defendant was directed to go anywhere was when she and her aunt were asked to step
13 outside upon the FBI's initial arrival for the agents to conduct a momentary protective sweep for safety.
14 (Dkt. 113 at 8–10, 21–26.)  In fact, once defendant and her aunt went back inside the house along with
15 the agents, no firearms were ever brandished, let alone unholstered.  *Id.*

16       At bottom, an analysis of the factors set out by the Ninth Circuit under the totality of the
17 circumstances as set forth in the government's Opposition and in view of these undisputed facts
18 establishes that the defendant was not in custody when interviewed by the FBI (Dkt. 113), and no other
19 conclusion should be reached in this case in view of the *Tang* order.  *See Craighead*, 539 F.3d at 1084;
20 *Hayden*, 260 F.3d 1062, 1066.

21       **C.**    **Regardless of Whether Defendant's Statements Were Made While She Was "In Custody," Defendant's False Statements Constitute Crimes and Are Admissible**
22
23       Even if the Court were inclined to find that defendant was in custody at the time of her
24 discussions with the FBI on July 13, 2020—which it should not as explained above and in the
25 government's Opposition—her statements should not be suppressed in any event because the statements
26 were themselves a criminal act and therefore admissible in the government's case-in-chief at trial under
27 Ninth Circuit precedent.  It is undisputed that defendant did not confess during her interview sessions
28 with the FBI on July 13, 2020, and the audio recordings and transcripts clearly show that defendant

USA'S SUPPL. BRIEF
CR 21-0011 WHA                                    5

instead calmly and repeatedly lied to the agents.  (Dkt. 113 at 12, 25.)  The defense's Request nonetheless asserts that "because the statements were the 'entire basis' for the count alleging a violation of 18 U.S.C. 1001(a)(2), making a false statement to the FBI, [the *Tang* court] dismissed that count," (Dkt. 120 at 2), implying that the Court should do the same in this case.  Not so.

The Ninth Circuit has unequivocally observed: "We have never, however, applied the exclusionary rule as a bar to the prosecution of a crime," holding that the exclusionary rule does not apply to statements that themselves constitute a crime.  *See Mitchell*, 812 F.2d at 1253.  In *Mitchell*, the Ninth Circuit affirmed that a defendant's statements threatening the life of the president were not suppressible as the fruit of an illegal detention, reasoning that "[p]rosecuting [defendant] for this new crime does not offend any sense of fair treatment or fair play, regardless of the legality or illegality of his detention." *Id.* at 1255–56.  The *Mitchell* analysis applies here.  Even if this Court finds a *Miranda* violation, it should not exclude defendant's statements.  This is because Count Five charges defendant for her July 13, 2020 statements to the FBI, and Count Two charges defendant with executing a scheme to obstruct justice, which includes, among other things, her July 13, 2020 statements to the FBI.

As previously explained in the government's Opposition, *Miranda* was not meant to guard against a situation in which the defendant never actually confesses to anything and instead repeatedly lies to agents, as is the case here.  *See* Dkt. 113 at 25.  As was similarly observed in *Gordon*, defendant's July 13, 2020 lies to agents in this case that "[defendant] seeks to suppress were not merely evidence of a crime, but also the crime itself," and therefore any "failure to give a *Miranda* warning does not bar prosecution of an offense committed while in custody."  *Gordon*, 974 F.2d at 1116 ("The purpose of the *Miranda* warning is to protect defendants by safeguarding their privilege against self-incrimination.").  Accordingly, the Court should not exclude defendant's July 13, 2020 statements given the charges of the case; rather, "[i]n this situation, whether [defendant] received a *Miranda* warning is irrelevant."  *Id.*

And other courts have confirmed that the *Mitchell* analysis applies to defendant's July 13, 2020 lies to the FBI in view of the specific charges brought in Counts Two and Five.  Count Five charges defendant with making false statements based on her July 13, 2020 statements to the FBI.  As in *Copeland* and *Melancon*, even if the Court were to conclude that defendant's statements were made in custody, "the false statements [defendant] made during the … interview were themselves criminal and

admissible at trial." *Copeland*, 291 F. App'x at 96 (citing *Mitchell*, 812 F.2d at 1253–55); *see also Melancon*, 662 F.3d at 712 (statements charged as criminal conduct "were properly admitted as the key evidence on the counts of making false statements"). Because defendant's lies to the FBI on July 13, 2020 are the basis of the charge against defendant for violating 18 U.S.C. § 1001 in Count Five, the statements were themselves a crime that are admissible. Likewise, the defendant's scheme to obstruct justice in violation of 18 U.S.C. § 1512(c)(2) charged in Count Two includes, among other things, the July 13, 2020 false statements defendant made to the FBI. As in *Gardner* with respect to a charged violation of another subsection of 18 U.S.C. § 1512, the court should not suppress "those statements that are themselves the operative basis of the crime charged" because defendant's lies to the FBI form part of the basis of the scheme to obstruct justice charged in Count Two. *See Gardner*, 993 F. Supp. 2d at 1306–07. This result is not surprising. The Supreme Court has long recognized that a failure to abide by *Miranda*'s prophylactic rule does not mean that unwarned statements made in custodial interrogation are inherently "compelled" under the Fifth Amendment (and thus inadmissible for all purposes).[3] *See also, e.g.*, *Mitchell*, 812 F.2d at 1253 ("Committing a crime is far different from making an inculpatory statement.").

In sum, defendant's July 13, 2020 false statements to the FBI were themselves a criminal act with respect to the charges of this case and therefore, regardless of whether *Miranda* warnings were required, admissible in the government's case-in-chief at trial under the law of this Circuit.

## IV.    CONCLUSION

For the reasons set forth above, the defense's motion should be denied. Defendant's voluntary interview sessions with the FBI on July 13, 2020 were noncustodial, and thus did not require *Miranda* warnings. Even if defendant was interviewed while in custody, which she was not for the reasons described above and in the government's Opposition, her false statements should still not be suppressed

---

[3] *See, e.g.*, *New York v. Quarles*, 467 U.S. 649, 655-60 (1984) (holding that voluntary unwarned statements made by a defendant during custodial interrogation, but obtained in order to protect public safety, were admissible at trial); *Harris v. New York*, 401 U.S. 222, 224 (1971) ("It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards."); *id.* at 226 (holding that defendant's credibility could be impeached by cross-examination with un-*Mirandized* statements).

under Ninth Circuit precedent because the statements were themselves a criminal act and therefore admissible at trial.

Dated: June 8, 2021

STEPHANIE M. HINDS
Acting United States Attorney

          /s/
ERIC CHENG
KYLE F. WALDINGER
Assistant United States Attorneys